UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| ANTWAIN ROBINSON | NO.: 09-00145-BAJ-SCR |

### RULING AND ORDER

Before the Court is Petitioner's *pro se* **MOTION UNDER 28 U.S.C. §2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY. (Doc. 85).** For reasons explained below, Petitioner's request for relief pursuant to § 2255 is **DENIED**.

I. BACKGROUND

On November 19, 2009, a federal grand jury returned an indictment charging Petitioner with one count of possession with intent to distribute fifty grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). (Doc. 1). Petitioner pleaded not guilty. (Doc. 8). Pre-trial motions followed. Among other things, Petitioner moved to suppress all statements and physical evidence obtained by federal agents investigating his case. (Doc. 12). Following an evidentiary hearing, the Court denied Petitioner's motion to suppress. (Doc. 20).

Trial commenced on February 9, 2011. (Doc. 39). The following day, February 10, one of the twelve jurors chosen to hear Petitioner's case developed an illness requiring immediate medical transport and hospitalization. (*See* Doc.

69 at pp. 44–45 (Transcript, February 10, 2011)). After a brief recess, Petitioner signed a document styled Stipulation for a Smaller Jury, in which he agreed to proceed with a "jury . . . consist[ing] of fewer than twelve persons." (Doc. 40 at p. 1; *see also* Doc. 39). Before accepting Petitioner's Stipulation, the Court questioned Petitioner to ensure that he understood the significance of proceeding with eleven jurors. (*See* Doc. 69 at pp. 46–47). Under oath, Petitioner affirmed: (1) he was present when the juror . . . got sick; (2) he signed the stipulation "of [his] own free will"; (3) he understood the consequences of going forward with eleven jurors "in terms of the trial and the procedure that has gone on thus far"; (4) nobody "force[d]" him to enter the Stipulation, nor was he "promise[d]" anything in return for entering the Stipulation; and (5) he did not have "any questions about anything that has happened so far." (*See id.*). Based on Petitioner's indications that he knowingly and voluntarily agreed to go forward with eleven jurors, the Court accepted Petitioner's Stipulation and proceeded with trial. (*Id.* at p. 47).

Following two days of evidence and argument, the jury convicted Petitioner as charged. (Doc. 38; Doc. 39; Doc. 41). Thereafter, the U.S. Probation Office prepared a report ("PSR") to assist the Court at Petitioner's sentencing. Petitioner's PSR recommended a term of imprisonment of "360 months to life" based on a total offense level of 37 and a criminal history

category of VI. (Doc. 50 at ¶ 54 (Revised PSR); *see also* Doc. 44 at ¶ 54 (Original PSR)). The PSR further indicated that Petitioner faced a mandatory *minimum* term of 10 years imprisonment pursuant to the *then*-existing drug-tables. 21 U.S.C. § 841(b)(1)(A). (Doc. 50 at ¶ 53 (Revised PSR); *see also* Doc. 44 at ¶ 53 (Original PSR)).

Petitioner did not object to the information contained in the PSR, or its calculations. (Doc. 49). However, on September 15, 2011, Petitioner filed a motion requesting that he be sentenced pursuant to the Fair Sentencing Act of 2010 ("FSA"), which—as it related to Petitioner—(1) *increased* the threshold quantity of crack cocaine required to trigger the 10–year mandatory minimum penalty, and (2) *reduced* the statutory maximum penalty from life to forty years imprisonment. (Doc. 59).

Petitioner's sentencing hearing occurred on October 5, 2011. (Doc. 74). First, the Court denied Petitioner's request for a new trial pursuant to Federal Rule of Criminal Procedure 25(b)(2). (Doc. 71 at pp. 4–5 (Sentencing Hearing Transcript)). Then, the Court granted Petitioner's motion to be sentenced pursuant to "the provisions of the fair sentencing act." (*Id.* at p. 10).

Having dispensed with preliminary matters, the Court proceeded to sentencing. Noting that "neither the Defendant nor the Government filed any objections to the pre-sentence investigation report," the Court "adopt[ed] the

3

undisputed factual statements reflected in the report and the guidelines recommended by the Probation Officer," as modified by the Court's application of the Fair Sentencing Act to Petitioner's case. (*Id.* at p. 12). The Court then sentenced Petitioner to a "term of 360 months" imprisonment, (*id.* at p. 21), citing "the quantity of drugs in this case, the defendant's prior convictions, and his extensive criminal history," (Doc. 67 at p. 2).

After the Court entered judgment, Petitioner filed a notice of appeal to the U.S. Fifth Circuit Court of Appeals. (Doc. 60). Petitioner's appeal raised two issues: (1) "his sentence [was] procedurally unreasonable because the district court erroneously believed that the Sentencing Guidelines were mandatory"; and (2) "the district court clearly erred in assessing [his] criminal history category." (Doc. 84 at p. 3). On August 20, 2012, the Fifth Circuit affirmed Petitioner's sentence. (*Id.* at p. 2).

Petitioner's 90-day period for seeking certiorari from the U.S. Supreme Court expired on November 19, 2012. Thereafter, on October 28, 2013, Petitioner filed the Motion to Vacate, Set Aside, or Correct Sentence that is the subject of this Order. (Doc. 85). Liberally construed, Petitioner's § 2255 motion asserts the following grounds for relief: (1) the Government withheld exculpatory evidence and "us[ed] 'ambush' tactics" in violation of its obligations pursuant to *Brady v. Maryland*; (2) Petitioner did not knowingly and

intelligently waive his right to trial by a jury consisting of twelve jurors; (3) Petitioner was deprived of effective trial counsel; and (4) Petitioner was likewise deprived of effective appellate counsel.[1] (*See* Doc. 85; Doc. 85-1). The Government opposes Petitioner's motion, (Doc. 87), and Petitioner has filed a response to the Government's opposition, (Doc. 88). A hearing on this matter is not necessary.

## II. DISCUSSION

Section 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426–27 (1962). Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

The Court addresses each of Petitioner's alleged errors in turn.

---

[1] Petitioner's *pro se* § 2255 Motion frames each issue raised as an independent ineffective assistance of counsel claim. (*See* Doc. 85-1 at pp. 6–7, 10–12). In accordance with the U.S. Fifth Circuit's admonishment to "liberally construe briefs of *pro se* litigants," the Court has reframed certain issues to align to well-established Constitutional claims. *See Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).

## A. Alleged *Brady* violation

Petitioner asserts in broad strokes that "the Government[] deliberate[ly] withheld] *Brady* materials," employed "ambush tactics," and "refus[ed] to furnish rquested [sic] evidence for defense preparations." (*See* Doc. 85-1 at pp. 5–6, 10–12). Although not entirely clear from Petitioner's Motion, it appears that his primary complaint is the Government's failure to "provide photographs and serial numbers of the U.S. currency provided to the [Confidential Source] on October 27, 2009 by law enforcement officials." (*Id.* at pp. 11–12; *see also* Doc. 88 at p. 9 ("The United States' [sic] should have disclosed the photograph and serial number evidence . . . .").

Under *Brady v. Maryland*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). "To establish a *Brady* violation, [Petitioner] must prove that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant because it was either exculpatory or impeaching; and (3) the evidence was material." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense,

the result of the proceeding would have been different." *Id.* at 267 (quotation marks and alterations omitted).

Here, Petitioner has failed to provide any indication that the photographs and serial numbers he seeks were favorable *or* material to his defense. Indeed, Petitioner's assertion that "the result of the trial would have been different," had this evidence been made available to him is belied by the record, which includes testimony from a confidential informant regarding the drug transaction underlying Petitioner's conviction, as well as a video recording of the transaction that occurred on November 10, 2009. (Doc. 68 at pp. 81–88). Accordingly, the Court determines that Petitioner's *Brady* claim fails because he cannot show *either* that "the evidence [at issue] was favorable to [his defense]" *or* that it was "material." *Edwards*, 442 F.3d at 264.

## B. Alleged violation of Petitioner's right to a twelve-person jury

Next, Petitioner asserts that his waiver of trial by twelve jurors was invalid because "[he] was not fully aware of the significance of that waiver because [his] trial counsel failed to explain to [him] that he had a right to have a full 12-member jury." (Doc. 85-1 at p. 7). The government responds that this claim is defaulted and, in any event, without merit. (*See* Doc. 87 at pp. 8–9).

Federal Rule of Criminal Procedure ("Rule") 23(b)(1) provides that, in general, "[a] jury consists of 12 persons." Fed. R. Crim. P. 23(b)(1). This general

7

rule, however, is *not* a Constitutional guarantee. *See Williams v. Florida*, 399 U.S. 78, 86 (1970) ("[T]he 12-man panel is *not* a necessary ingredient of trial by jury . . . ." (emphasis added)). Indeed, Rule 23 includes various means for dispensing with the 12-person jury requirement, including a written stipulation by the parties approved by the Court. *See* Fed. R. Crim. P. 23(b)(2).

As noted by the Government, Petitioner failed to raise this issue at trial. Quite the opposite: before entering his Stipulation, Petitioner affirmed under oath that he "sign[ed] this document of [his] own free will" and "under[stood]" its consequences. (Doc. 69 at pp. 46–47). Nor did Petitioner raise the issue of involuntary waiver on appeal. *See* Doc. 84 at p. 3. This issue is therefore being raised for the first time in the present § 2255 motion.

"[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). To establish cause, Petitioner offers only vague allegations of ineffective assistance of counsel (discussed more fully below). (*See* Doc. 85-1 at pp. 6–8, 12–14). Further, Petitioner cannot show that actual prejudice resulted from his counsel's failure to raise the issue of involuntary waiver in light of the conclusive evidence of his guilt, which included the testimony of the

8

confidential informant that participated in the drug transaction for which Petitioner was charged and convicted. (*See* Doc. 68 at pp. 77–87). Accordingly, the Court determines that Petitioner has defaulted this claim.[2]

### C. Alleged Ineffective Assistance of Counsel

Finally, Petitioner asserts that his trial counsel and appellate counsel were each ineffective. In order to establish ineffective assistance of counsel, Petitioner must show: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 689–94 (1984); *see also Higgins v. Cain*, 720 F.3d 255, 260–61 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 688 (2013) (applying *Strickland* standard to ineffective assistance of appellate counsel claim).

#### *i. Trial Counsel*

Petitioner cites various examples of trial counsel's alleged ineffective assistance. First, Petitioner complains that his trial attorney performed deficiently when he filed a motion to suppress without including sufficient facts

---

[2] Even if the Court assumes that Petitioner's claim is not defaulted, it is without merit. Effective waiver of trial to a jury of twelve occurs when there is "express and intelligent consent of the defendant." *United States v. Smith*, 523 F.2d 788, 791 (5th Cir. 1975). Here, it is undisputed that Petitioner's Stipulation was "express." Further, the Court is satisfied that Petitioner's waiver was "intelligent" based on his sworn representations that he entered into the Stipulation of his own free will and understood its consequences. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *cf. United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986) ("[T]here must be independent indicia of the likely merit of the petitioner's contentions, and mere contradiction of his statements at [a prior proceeding] will not carry his burden.").

and/or legal authority to "support the granting of said motion." (Doc. 85-1 at p. 4). Next, Petitioner argues that the Government's failure to produce *Brady* materials "caused [his] lawyer to render deficient performance." (*Id.* at pp. 5, 10–12). Further, Petitioner asserts that his lawyer rendered ineffective assistance when "[he] waived [Petitioner's] right to 12 jurors" without first "explain[ing] to [Petitioner] that he had a right to . . . a full 12-member jury." (*Id.* at pp. 6–7). Finally, Petitioner complains that his trial counsel was "generally" ineffective. (*Id.* at p. 8).

Upon review, each of Petitioner's alleged instances of ineffective assistance fails the two-prong *Strickland* analysis. As an initial matter, the Court disagrees with Petitioner's assessment that his trial attorney's motion to suppress was factually and legally deficient. On the contrary, counsel's August 18, 2010 Motion to Suppress includes a detailed factual basis, well-developed legal argument, and exhibits to support counsel's claim that "the warrant used to search [Petitioner's] home was [deficient, and therefore] the evidence obtained therefrom must be suppressed." (Doc. 12-1a t p. 3). In any event, even if the Court *assumes* that counsel's initial Motion to Suppress was deficient as written, it cannot say that Petitioner was *prejudiced* by this deficiency, insofar as the Court denied Petitioner's motion only *after* a full evidentiary hearing. (Doc. 20).

Nor was counsel's performance rendered deficient as a result of the Government's alleged failure to produce *Brady* materials. As indicated above, Petitioner has failed to show *either* that the evidence at issue was favorable to his defense, *or* that it was material. Accordingly, the Court cannot say that counsel's performance necessarily fell below an objective standard of reasonableness simply because he was denied access to such materials.

Finally, Petitioner's claim that counsel failed to adequately inform him of his right to a 12-person jury prior to entering his Stipulation to proceed with fewer than 12 jurors is without merit in light of Petitioner's sworn representations to the Court. As indicated above, Petitioner stated on the record that he entered into the Stipulation of his own free will and that he understood its consequences. Thus, even if the Court *assumes* that trial counsel failed to explain to Petitioner his right to a 12-person jury, such failure caused no harm insofar as Petitioner was independently aware of this right, *and* the consequences of foregoing it. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *cf. United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986) ("[T]here must be independent indicia of the likely merit of the petitioner's contentions, and mere contradiction of his statements at [a prior proceeding] will not carry his burden.")

In sum, the Court determines that trial counsel did *not* render ineffective assistance in any of the specific instances cited by Petitioner. Further, Petitioner's assertion that counsel's performance was "generally" deficient is not enough to carry his burden of proving ineffective assistance of counsel. *See Knighton v. Maggio*, 740 F.2d 1344, 1349 (5th Cir. 1984) ("One claiming ineffective assistance of counsel must identify specific acts or omissions; general statements and conclusionary charges will not suffice."). Accordingly, Petitioner's claim of ineffective assistance of trial counsel fails.

### ii. *Appellate Counsel*

Last, Petitioner alleges that his appellate counsel was ineffective because he "fail[ed] to raise all potential and meritorious issues." (Doc. 85-1 at p. 12). Specifically, Petitioner asserts appellate counsel should have argued: (1) "[Petitioner's] constitutional right[] to a fair trial [was] violated by the exclusion of the full 12-members . . . [from] the jury"; and (2) "[Petitioner's] 30-year sentence [is] greater than necessary to satisfy the 18 U.S.C. § 3553(a) requirements." (Doc. 85-1 at p. 14).

Here again, the Court cannot agree with Petitioner's assessment that counsel was ineffective. Courts have long recognized that appellate counsel should exercise professional judgment in determining which issues to emphasize on appeal. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) ("Experienced

advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Appellate counsel's choice to focus on issues other than whether Petitioner adequately waived the 12-person jury requirement is understandable in light of Petitioner's written Stipulation and sworn statements. In other words—for all the reasons previously discussed—appellate counsel's performance did not fall below an objective standard of reasonableness when he abandoned Petitioner's waiver argument on appeal.

Likewise, appellate counsel's performance was not deficient for failing to challenge the substantive reasonableness of Petitioner's sentence. At Petitioner's sentence hearing, the Court specifically noted its consideration of the § 3553(a) factors, and based its sentence determination on Petitioner's extensive criminal history. (Doc. 71 at pp. 20–21). In its Statement of Reasons supporting the judgment, the Court stated: "The sentence imposed reflects the quantity of the drugs in this case, the defendant's prior convictions, and his extensive criminal history." (Doc. 67 at p. 2). In light of these findings, it was not unreasonable for Petitioner's appellate counsel to focus on other sentencing issues—specifically, whether Petitioner's sentence was procedurally unreasonable because the Court erroneously believed that the Sentencing Guidelines were mandatory, and (2) whether the Court erred in assessing

Petitioner's criminal history category. (Doc. 84 at p. 3). *See Jones v. Barnes*, 463 U.S. at 751–52.

III. CONCLUSION

In sum, Petitioner has failed to show that he is entitled to the relief that he seeks. Accordingly,

**IT IS ORDERED** that Petitioner's **MOTION UNDER 28 U.S.C. §2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY** is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because Petitioner cannot "ma[ke] a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Baton Rouge, Louisiana, this 4th day of November, 2014.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA